# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

John E. Ashcraft,

     Plaintiff

v.

Welk Resort Group, Corp. et al.,

     Defendants

Case No.: 2:16-cv-02978-JAD-NJK

**Order Granting in Part Cross-motions for Summary Judgment**

[ECF Nos. 130, 134]

Plaintiff John E. Ashcraft contends that consumer reporting agency (CRA) Experian Information Solutions, Inc. violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681–1681x , and Nevada's consumer-reporting statutes when it failed to reasonably reinvestigate Ashcraft's dispute about his account with Welk Resort Group, Corp. and later reported inaccurate information about that account.[1]  Ashcraft's first claim for relief implicates two provisions of the FCRA: § 1681i(a)'s requirement that CRAs reinvestigate the accuracy of information in a consumer's file upon receiving a consumer's dispute notice and § 1681c(a)(5)'s mandate that adverse items of information cannot be reported beyond seven years.  Ashcraft's second claim implicates § 1681e(b)'s mandate that CRAs use reasonable procedures to ensure maximum possible accuracy of the consumer-credit information that they obtain.[2]  Ashcraft's third claim alleges that Experian violated NRS 598C.160(1)'s requirement that CRAs

---

[1] ECF No. 78 (first amended complaint).

[2] Ashcraft's first two claims vaguely allege that "[t]he foregoing acts and omissions constitute numerous and multiple willful, reckless[,] or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681." ECF No. 78 at ¶¶ 132, 136.  The only differences are that the second claim is alleged on behalf of Ashcraft and one of the putative subclasses, and it falls under a heading stating that it arises only under § 1681e(b).  *Compare id.* at ¶¶ 131–34, *with id.* at ¶¶ 135–39.  Thus, I construe Ashcraft's second claim as alleging only violations of § 1681e(b), and I construe his first claim as alleging violations of §§ 1681i and 1681c.

reinvestigate the accuracy of information that has been disputed by a consumer.  And his fourth claim seeks declarations that Experian violated § 1681e(b) and NRS 598.160(1).  Ashcraft also asserts his last three claims on behalf of two putative classes of similarly situated consumers.

Each side moves for summary judgment on Ashcraft's claims under §§ 1681e and 1681i and NRS 598C.160.[3]  To sustain his §§ 1681e and 1681i FCRA claims, Ashcraft must show that Experian prepared a consumer report with, or its files contained, any item of information that is patently wrong or so misleading that it can be expected to negatively affect credit decisions. Having carefully considered the arguments of counsel and the substantial record in this case, I find that Ashcraft has shown that Experian prepared a consumer report with a patently wrong status date for his Welk Resort account, and a reasonable jury could find that he disputed that item of information to Experian.  But he has not shown that Experian's reporting was materially misleading.

Factual disputes about how the wrong status date came to be reported, if Experian had reason to distrust Welk Resort or the information it furnished, and the objective meaning of the nature of Ashcraft's dispute preclude summary judgment on whether Experian used reasonable procedures when it obtained the status date (§ 1681e) or reinvestigated Ashcraft's possible dispute of that information (§ 1681i).  But the uncontested evidence shows that Experian did reinvestigate Ashcraft's dispute, so his claim under NRS 598C.160(1), which does not have a reasonableness requirement, fails as a matter of law.  I therefore grant in part the cross-motions for summary judgment and refer the parties to the magistrate judge for a mandatory settlement conference.

---

[3] ECF Nos. 130 (Ashcraft's motion); 134 (Experian's motion).  Neither side moves for summary judgment on Ashcraft's § 1681c claim, so I do not address it in this order.

**Background**

**A.    Bankruptcy petition (April 2011) and discharge (August 2011)**

Ashcraft voluntarily filed a Chapter 7 bankruptcy petition on April 29, 2011.[4] Accompanying his petition were schedules, a statement of intent, and a creditor matrix.  In those documents, Ashcraft identified "Welk Resorts" as one of his creditors.[5]  Ashcraft also repeatedly stated in those documents that he owned a timeshare through "Welk Resorts" and intended to surrender the property to that creditor.[6]  Ashcraft has not identified any records from his bankruptcy case confirming that he surrendered the property and I found none.

The bankruptcy court granted Ashcraft a discharge on August 3, 2011.[7]  The discharge order does not specify what debts were discharged.  Rather, it explains that a discharge "eliminates a debtor's legal obligation to pay a debt that is discharged.  Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed."[8]  The order lists "[s]ome of the common types of debts [that] are <u>not</u> discharged in a chapter 7 bankruptcy case."[9]  And it concludes with the bolded warning: "[t]his information is only a general summary of the bankruptcy discharge.  There are exceptions to the general rules.  Because the law is

---

[4] ECF No. 130-3 at 3 (Voluntary Petition).

[5] *Id.* at 14 (Schedule A – Real Property), 47 (Creditor Matrix).

[6] *Id.* at 14, 20 (Schedule D – Creditors Holding Secured Claims), 40–41 (Chapter 7 Individual Debtor's Statement of Intention).

[7] ECF No. 130-4 (discharge order).

[8] *Id.* at 3.

[9] *Id.* (including "debts [that] are not properly listed by the debtor[,]" "that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged[,]" and "[d]ebts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code['s] requirements").

complicated, you may want to consult an attorney to determine the effect of the discharge in this case."[10]

Eight days after discharge, Welk Resort sent Ashcraft a letter stating that it "has agreed to accept a grant deed to return the property to [its] ownership."[11]  Ashcraft promptly signed the letter and grant deed and returned both to Welk Resort.[12]  Welk Resort recorded the grant deed on August 24, 2011.[13]  Ashcraft's bankruptcy case was closed on October 17, 2011.[14]

**B.    Consumer report (March 2016) and dispute letter (April 2016)**

Almost five years later, Ashcraft requested and received a free copy of his consumer report from Experian.[15]  Ashcraft reviewed the report and determined that Experian was incorrectly reporting late payments of 30 days in May 2011 and 60 days in June 2011 in the payment history grid for his Welk Resort account.[16]  Ashcraft's attorneys here—the same ones who represented him in bankruptcy—drafted a dispute letter for his review and signature.[17]  In this letter Ashcraft explains,

> You reported that I made the following late payment(s) after filing my Bankruptcy:
>
> May 2011        30 days late
>
> June 2011        60 days late

---

[10] *Id.* (emphasis in bold omitted).

[11] ECF No. 134-2 at 79 (letter from Welk Resort to Ashcraft).

[12] *Id.*

[13] ECF No. 130-5 at 9 (recorded Grant Deed).

[14] *In re Ashcraft*, No. 11-17593, at ECF No. 25 (Bankr. D. Nev. Oct. 17, 2011) (Final Decree).

[15] ECF No. 130-19 at 85 (83:07–11) (Ashcraft deposition).

[16] *Id.* at 86–87 (83:23–85:08).

[17] *Id.* at 87 (85:09–15).

> This was inaccurate in itself since I was current with all obligations due to Welk Resort Group for these dates as required after my Bankruptcy was filed and it was inaccurate to state I was "late" during any of these dates, since I was fully and timely performing any duties owed to Welk Resort Group during the above date(s).
>
> Accordingly, please immediately correct the above inaccurate "late" notations to reflect that I was current and maintaining my obligations to Welk Resort Group.  If you do not immediately make these corrections on my creditor report, please include a 100 word statement in my credit report of all the disputed information contained in this letter regarding this account.[18]

Attached to the letter was proof of Ashcraft's identity, the first three pages of his bankruptcy petition, and a copy of his consumer report from Experian dated March 15, 2016.[19]  None of the pages that Ashcraft provided from his bankruptcy petition mentions Welk Resort.[20]

The public-records section of the March 2016 consumer report states that Ashcraft filed for bankruptcy in April 2011 and received a Chapter 7 discharge in August 2011.[21]  The report states that some accounts were discharged in Ashcraft's bankruptcy, but it does not list that information about the Welk Resort account.[22]  Instead, the report states that the Welk Resort account's status is "[p]aid, [c]losed" with a date of "Oct 2011" for that status.[23]  The credit limit or original amount reported is "$9,445."[24]  The recent balance, high balance, and monthly payment are all "[n]ot reported."[25]

---

[18] ECF No. 130-6 at 3 (dispute letter).

[19] *Id.* at 4–25.

[20] *See id.*

[21] *Id.* at 6 (March 2016 consumer report).

[22] *See id.* at 8.

[23] *Id.*

[24] *Id.*

[25] *Id.*

**C.     Investigation, reinvestigation, and report (May 2016)**

Experian's Federal Civil Procedure Rule 30(b)(6) witness Anna Simmons testified in deposition that Experian received Ashcraft's dispute letter and sent an automatic consumer dispute verification (ACDV) through the e-Oscar system[26] to Welk Resort, which included a complete copy of the dispute letter and its attachments.[27]   Experian identified the dispute as code "106 – disputes present/previous Account Status, History.   Verify accordingly."[28]   It also briefly described Ashcraft's dispute as claiming that the account should reflect that he was "paid current."[29]   Welk Resort sent its ACDV response back to Experian on May 16, 2016.[30]   Experian updated the information on the tradeline and sent Ashcraft a reinvestigation report with the updated account information on the same day.[31]

Within the reinvestigation report, Experian rereported the late payments in May and June 2011, the monthly payment and high balance as "not reported[,]" and the credit limit or original amount as "$9,445."[32]   It reported a new status of "[c]reditor received deed" and "May 2016" as the date for that status.[33]   It reported that "this account is scheduled to continue on record until

---

[26] The e-Oscar system is used by CRAs and data furnishers to communicate about disputes.   ECF No. 130-15 at 100 (99:06–09) (Simmons deposition).

[27] *Id.* at 125–26 (124:25–125:11).

[28] ECF No. 130-7 at 2 (Experian's ACDV response); *accord* ECF No. 134-2 at 196 (Welk Resort's ACDV response).

[29] ECF No. 130-7 at 2 (Experian's ACDV response); *accord* ECF No. 134-2 at 196 (Welk Resort's ACDV response).

[30] ECF No. 130-15 at 188 (187:13–23).

[31] *Id.* at 196 (195:08–23).

[32] ECF No. 130-8 at 3.

[33] *Id.*

6

Feb 2018."[34]  And it reported a recent balance of "$0 as of May 2016."[35]  On the "dispute results" page of the reinvestigation report, if Ashcraft "still question[ed] an item," Experian invited him to "contact the furnisher of the information directly or review the original information in the public record."[36]  It also informed Ashcraft that he could "submit additional documents to [Experian] supporting his claim . . . ."[37]  Ashcraft didn't do any of that.

The parties genuinely dispute whether the wrong status date originated with Welk Resort. "Date of status" is an item of information that appears on the consumer reports but does not appear on the ACDV response forms that Experian and Welk Resort provided.[38]  The basis for the parties' dispute about the origin of the May 2016 status date is Simmons's deposition testimony.

Simmons testified that to determine the date to report for a new status, Experian "look[s] at the balance date that the furnisher is required to respond back with."[39]  But Welk Resort "did not provide the required balance date, so Experian add[ed] the ACDV response date" of May 16, 2016, for the balance date.[40]  When Ashcraft's counsel pointed out that he saw a balance date of May 16, 2016, listed in the subscriber's response box on Experian's form and asked if Experian put that information there, Simmons responded "[y]es."[41]  She explained that Experian did so

---

[34] *Id.*

[35] *Id.*

[36] *Id.* at 2.

[37] *Id.*

[38] *Compare* ECF Nos. 130-6 at 8 (March 2016 report) and 130-8 at 3 (May 2016 report), *with* ECF Nos. 130-7 at 2 (Experian's ACDV response) and 134-2 at 196 (Welk Resort's ACDV response).

[39] ECF No. 130-15 at 166–67 (165:25–166:08).

[40] *Id.* at 166–68 (165:25–167:07).

[41] *Id.* at 168 (167:08–15).

"[b]ecause the balance date was not provided as is required when [the furnisher] provide[s] that account status."[42]   Simmons also explained that Experian's disclosure log (D/R Log) does not show that Welk Resort responded with a balance date and she knows from "training that if [the furnisher] do[esn't] provide a date, [Experian] do[es] use the ADCV response date."[43]

Simmons later declared that she was mistaken in testifying that Experian supplied the status date.[44]   She explained that, after her deposition, she "reviewed several documents confirming that Welk, not Experian, provided the date of account information that populated the 'Balance Date' ACDV field."[45]   Simmons identified four pieces of evidence that she reviewed to reach her contrary conclusion: (1) Welk Resort's internal copy of its ACDV response, (2) the declaration of Welk's Corporate Financial Services Officer, (3) the deposition transcript of Welk's Rule 30(b)(6) witness, and (4) the deposition transcript of Ashcraft's expert witness.[46] But Simmons's original, plaintiff-favorable testimony remains part of the record in this case.[47] And Ashcraft's expert Evan Hendricks testified in his deposition that Simmons's original testimony is consistent with Experian's internal guide for processing ACDVs, specifically the grid-conflict-rule procedures.[48]

---

[42] *Id.*

[43] *Id.* (168:17–21).

[44] ECF No. 134-1 at 7, ¶¶ 3–4 (Simmons declaration).

[45] *Id.* at 7–8, ¶ 6.

[46] *Id.*

[47] *See* ECF No. 91 (Order Affirming Magistrate Judge's Order Striking FRCP 30(e) Changes).

[48] ECF No. 134-1 at 120 (221:11–20) (Ashcraft's expert Evan Hendricks deposition) (referring to the "conflict grid rules" portion of the manual).

**Discussion**

**A.     Legal standards for cross-motions for summary judgment**

The principal purpose of the summary-judgment procedure "is to isolate and dispose of factually unsupported claims or defenses . . . ."[49]  The moving party "bears the initial responsibility" of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[50]  If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[51]

Who bears the burden of proof on the factual issue in question is critical.  When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[52]  Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."[53]  When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party (typically the defendant) doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual

---

[49] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[50] *Id.* at 323.

[51] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[52] *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)) (citation and quotations omitted).

[53] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (citation omitted).

issue.[54]  The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[55]  "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both motions before ruling on each of them."[56]

**B.     Ashcraft's FCRA claims**

15 U.S.C. § 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  "Liability under § 1681e(b) is predicated on the reasonableness of the credit reporting agency's procedures in obtaining credit information."[57]  15 U.S.C. § 1681i(a)(1)(A) similarly provides that "[i]f the completeness or accuracy of any item of information contained in a consumer's file at the consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute," the agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate" and record the information's current status or delete it from the file.

To sustain a claim under either statute, the plaintiff must present evidence tending to show that a credit reporting agency prepared a credit report (§ 1681e) or credit file (§ 1681i) on

---

[54] *See, e.g.*, *Celotex*, 477 U.S. at 323–24.

[55] *Id.* at 322.

[56] *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two,* 249 F.3d 1132, 1134 (9th Cir. 2001)).

[57] *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (collecting cases).

him that contains inaccurate information.[58]  An item of information is inaccurate for the FCRA's

purposes if "it is either patently incorrect or is misleading in such a way and to such an extent

that it can be expected to adversely affect credit decisions."[59]  "The FCRA does not impose strict

liability, however—an agency can escape liability if it establishes that an inaccurate report was

generated despite the agency's following reasonable procedures."[60]  "The reasonableness of the

procedures and whether the agency followed them will be jury questions in the overwhelming

majority of cases."[61]

### 1.    *Inaccurate information*

Ashcraft argues that Experian reported three patently wrong items about his Welk Resort

account: (1) $0 balance as of May 2016, (2) creditor received the deed in May 2016, and

(3) payments were 30- and 60-days late in May and June 2011.[62]  There is no genuine dispute

that the second item—the status date—is patently wrong.  Experian points out that Ashcraft

admittedly did not return the deed in lieu of foreclosure until after his bankruptcy discharge,[63]

but that fact is not material to whether Welk Resort received the deed in May 2016.  The

uncontested evidence shows that Welk Resort received and recorded the deed in August 2011.[64]

But I am not persuaded that the other two items are patently wrong.  Although neither

side provides any law addressing bankruptcy discharges or does the analysis necessary to show

---

[58] *Id.*

[59] *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (internal quotation omitted) (collecting cases).

[60] *Guimond*, 45 F.3d at 1333.

[61] *Id.*

[62] ECF No. 130 at 17.

[63] ECF No. 141 at 15.

[64] ECF Nos. 130-5 at 9; 134-2.

that the Welk Resort debt was, in fact, discharged, it is not genuinely disputed that the debt was discharged.  Because Ashcraft's legal obligation to pay the debt was discharged in August 2011,[65] it was factually accurate to report that the account had a $0 balance in May 2016.  It was also factually accurate to report that payments were 30- and 60-days late in May and June 2011 because Ashcraft doesn't dispute that he stopped paying Welk Resort after he filed for bankruptcy in April 2011.[66]

Ashcraft argues that Experian's reporting was misleading because it deviated from the credit industry's Credit Reporting Resource Guide (CRRG).[67]  He points out that the CRRG counseled Experian to report the account's status as discharged in Chapter 7 bankruptcy with a status date of April 29, 2011 (the petition date), and no payment history.[68]  But Ashcraft does not provide authority or evidence that failing to report that an account has been discharged in bankruptcy can be expected to negatively affect credit decisions.[69]  He doesn't even provide argument to that effect; he merely concludes that Experian's "deviation from the [guidelines] was materially misleading."[70]  Ashcraft has "the burden to prove that the inaccuracy is 'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'"[71]  He cannot discharge that burden with unexamined and unsupported conclusions.

---

[65] *Blixseth v. Credit Suisse*, 961 F.3d 1074, 1082 (9th Cir. 2020) (explaining that "a discharge in bankruptcy does not extinguish the debt itself but merely releases the debtor from personal liability") (internal quotation omitted).

[66] ECF No. 130-19 at 61–62 (59:09–60:14).

[67] ECF No. 130 at 18.

[68] *Id.*

[69] *See id.* at 6–7, ¶ 8; 10–11, ¶ 15; 12, ¶ 18; 18.

[70] *Id.* at 18.

[71] *Shaw*, 891 F.3d at 756.

12

Ashcraft has therefore failed to show that Experian's reporting was materially misleading.  But even if attorney conclusions were enough to survive summary judgment, I could not decide as a matter of law that Experian's reporting was materially misleading in violation of § 1681i because, as discussed below in Section 3(a), Ashcraft's dispute is ambiguous about whether he claimed that the account's status should be reported as discharged in bankruptcy.  And as will be shown, that ambiguity bleeds into Ashcraft's § 1681e claim.

What this means is that Ashcraft has identified a single inaccuracy: the patently wrong May 2016 status date.  The status date supplies the inaccuracy needed for Ashcraft to proceed on his § 1681e claim.  To sustain his claim under § 1681i, Ashcraft must have disputed the status date to Experian.[72]  There is no evidence he did that, but his original dispute concerned the account's status.[73]  If the account's status is disputed then, logically, any date reported for that status is also disputed.  The wrong status date therefore applies to Ashcraft's § 1681i claim, too.

### 2.    *Consumer report required for claim under § 1681e(b)*

To round out his burden under § 1681e, Ashcraft must demonstrate that the wrong status date appeared on a consumer report that Experian prepared about him.  Ashcraft persuasively argues that the reinvestigation report Experian sent him in May 2016 fits the bill.[74]  He points out that the FCRA requires CRAs to provide consumers with "a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation" either as part of or in

---

[72] *See* 15 U.S.C. § 1681i(a)(1)(A) (stating that a CRA's duty to reinvestigate whether disputed information is inaccurate arises when a "consumer notifies the agency directly, or indirectly through a reseller, of such dispute").

[73] ECF No. 130-7 at 2 (Experian's ACDV response); *accord* ECF No. 134-2 at 196 (Welk Resort's ACDV response).

[74] ECF No. 130 at 15–16.

1   addition to written notice of the results of the reinvestigation.[75]  Experian provided the required

2   consumer report to Ashcraft on page 2 of the reinvestigation report, which includes the wrong

3   status date.[76]

4          Ashcraft also persuasively argues that the reinvestigation report qualifies as a consumer

5   report because Experian had a reasonable expectation that it would be used for a permissible

6   purpose.[77]  The Ninth Circuit explained in *Comeaux v. Brown & Williamson Tobacco Co.* that if

7   a CRA provides a report "based on a reasonable expectation that [it] will be put to a use

8   permissible under the FCRA, then that report is a 'consumer report' under the FCRA . . . ."[78]

9   The reinvestigation report states that Ashcraft can ask Experian to send "these results" to past

10  recipients of his credit report.[79]  Ashcraft points out that furnishing a consumer report "[i]n

11  accordance with the written instructions of the consumer to whom it relates" is a permissible

12  purpose under the Act.[80]  Ashcraft has therefore shown that Experian prepared a consumer report

13  on him that contains a patently wrong status date.  I therefore proceed to the parties' arguments

14  about whether Experian used reasonable procedures when it obtained that information and

15  reinvestigated Ashcraft's dispute of it.

16

17

18

19

---

20  [75] 15 U.S.C. § 1681i(a)(6)(B)(2)(ii).

    [76] ECF No. 130-8 at 3.

21  [77] *Id.* at 16–17.

22  [78] *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1274 (9th Cir. 1990) (emphasis omitted).

23  [79] ECF No. 130-8 at 2.

    [80] 15 U.S.C. § 1681b(a)(2).

14

### 3.    Reasonableness of procedures

####     a.    Reconciling internal data and reviewing bankruptcy records

Ashcraft argues that the procedures Experian used to reinvestigate his dispute and obtain the wrong status date were unreasonable because it did not reconcile its public-record data with its tradeline data or review records from his bankruptcy case.[81]  Experian argues that reviewing records from Ashcraft's bankruptcy case is not reasonable under these circumstances because it did not have notice that Ashcraft was disputing that the account's status should be reported as discharged in bankruptcy.[82]  It points out that even Ashcraft's own expert could not confirm if the debt had, in fact, been discharged.[83]  And it explains that the Ninth Circuit has stated that a CRA "is not required as part of its reinvestigation duties to provide a legal opinion on the merits" about a debt's validity.[84]

But in nearly the same breath, Experian also explains that had Ashcraft simply "provided a schedule of creditors from his bankruptcy showing that the Welk [Resort] account was discharged, and indicated that he was disputing the account's reporting as not included in bankruptcy, Experian may have changed its reporting pursuant to its own policies."[85]  If bankruptcy schedules and a clear dispute letter are enough for Experian to unilaterally determine that an account has been discharged and update its reporting accordingly, then a rational fact finder could find that reviewing the records in a bankruptcy case or reconciling its own public-record data with its tradeline data are reasonable procedures for a CRA to undertake when

---

[81] ECF No. 130 at 19–22.

[82] ECF No. 141 at 19.

[83] *Id.* at 19, 21–22 (citing ECF No. 134-1 at 95, 110–11 (122:08–15, 184:07–187:20)).

[84] *Id.* at 20 (quoting *Carvalho v. Equifax Info. Srvs., LLC*, 6289 F.3d 876, 892 (9th Cir. 2010)).

[85] *Id.* at 22 (quoting ECF No. 134-1 at 23–24 (221:22–224:12).

1  reinvestigating a consumer's dispute that his account should be reported as discharged or

2  obtaining information from a furnisher about that account.

3      The question here is whether Ashcraft claimed in his dispute that the account should be

4  reported as discharged.  The parties genuinely debate the objective meaning of Ashcraft's

5  dispute.  Experian contends that Ashcraft merely claimed that no late payments should be

6  reported, i.e., that the status should be "paid, current."[86]  Ashcraft disagrees, arguing he claimed

7  that no late payments should be reported because the debt should be reported as discharged in

8  bankruptcy with an inclusion date matching his petition date.[87]

9      I note that Ashcraft's dispute letter twice mentions bankruptcy, but the references are

10  opaque.  Neither the letter nor the attachments expressly state that Welk Resort was listed as a

11  creditor in Ashcraft's bankruptcy.  Despite Ashcraft's attorneys' repeated instance to the

12  contrary,[88] those documents also do not expressly state that the debt was included or discharged

13  in bankruptcy (in those terms or any reasonable synonym or phrase).  The letter's clunky

14  phrasing implies that the debt was fully and timely paid but is ambiguous about how that

15  happened.  A reasonable fact finder could interpret the letter as claiming that the late payments

16  were wrong because the debt was discharged in bankruptcy.  A reasonable fact finder could also

17  interpret the letter as claiming that the late payments were wrong because the debt was timely

18  and fully paid outside of bankruptcy.  Because Ashcraft's dispute is ambiguous, the trier of fact

19  must determine if he claimed that the account should be reported as discharged.

20

21

22  [86] *See, e.g.*, ECF Nos. 141 at 24; 134-1 at 22 (214:03–215:10) (Experian's expert Kimberly Cave deposition).

23  [87] *See, e.g.*, ECF Nos. 130 at 4, ¶ 3; 130-19 at 95–96 (93:17–94:01); 130-16 at 24 (97:12–98:08).
    [88] ECF Nos. 130 at 4, ¶ 3; 146 at 5.

The nature of Ashcraft's dispute matters for both of his FCRA claims.  The reasonableness of the procedures that a CRA uses when it reinvestigates a consumer's dispute naturally turns in part on the nature of the dispute.  There is no such obvious connection between a consumer's dispute and the reasonableness of the procedures that a CRA uses to obtain information when it prepares a report on a consumer.  But Experian obtained the wrong status date in the context of reinvestigating Ashcraft's dispute, so in this case the reasonableness of Experian's procedures for obtaining that information turns in part on the nature of Ashcraft's dispute.  Whether Experian's procedures were reasonable is a question for the jury to resolve if it determines that Ashcraft's dispute claimed that the account should be reported as discharged.

### b.    Reviewing county recorder's records

Ashcraft also argues that Experian's procedures were unreasonable because it did not review the parcel records from the San Diego County Recorder's office when it obtained the wrong status date.[89]  But he fails to explain how Experian would have known what county's records to search for the deed to his timeshare.  To the extent Ashcraft argues that Experian should have searched parcel records for all counties in the country, he has not raised a genuine dispute that this is a reasonable procedure for a CRA to undertake.  I therefore grant Experian summary judgment on the theory that its procedures were unreasonable because it failed to review county recorder's files when obtaining the wrong status date or reinvestigating Ashcraft's dispute.

### c.    Policy of substituting ACDV response date for status date

Ashcraft's main argument is that Experian's procedures are unreasonable because it unilaterally reported the ACDV response date as the status date when Welk Resort furnished a

---

[89] ECF No. 130 at 19.

new status but no corresponding date for that information.[90]  He concludes that this procedure will always result in a patently wrong status date.  Ashcraft outlines a plausible way that Experian could have done this under the procedures listed in its manual for processing and evaluating ACDVs.[91]  His chosen procedure says that if the ACDV response is to update the status and keep the account open, then the dispute agent should use the "balance date" if provided or the "response date" if not.[92]

Ashcraft argues that I must find as a matter of law that Welk Resort could not have possibly furnished a balance date because its ACDV response form doesn't have a "balance date" field—only Experian's form has that field.  It is true that Welk Resort's and Experian's ACDV forms are not identical, but they appear to contain the same information.  Experian's form has a field called "balance date" while Welk Resort's form has a field called "date of account information."[93]  These fields appear to contain the same information because the date originally listed on both is October 31, 2011, and that date doesn't appear in any other field on either form.  There is no evidence that e-Oscar's outputting different descriptors for the same information—using terminology that a CRA uses on its form versus terms that make sense to a credit furnisher on its form—is a bug in the system rather than a feature of it.  A reasonable jury could find that the "date of account information" field on Welk Resort's form corresponds to the "balance date" field on Experian's form.  Experian, in fact, provides evidence to support its

---

[90] *Id.* at 20.

[91] ECF No. 146 at 4.

[92] ECF No. 134-2 at 196.

[93] *Compare* ECF No. 130-7 at 2, *with* 134-2 at 196 (capitalization omitted).

theory that Welk Resort furnished the wrong status date when it listed "5-16-2016" in the "date of account information" on its response form.[94]  I cannot resolve this dispute of fact at this stage.

The evidence also does not clearly show that Welk Resort instructed Experian to keep the account open, which Ashcraft must show to prevail on this theory as a matter of law.  Although Experian considers the deed-in-lieu status that Welk Resort furnished to be an "open" one,[95] Welk Resort's ACDV response shows that it also furnished August 29, 2011, as the date that the account was closed.[96]  And it instructed Experian to rereport a zero balance and no monthly balance.[97]  The result is that it is genuinely disputed how the wrong status date came to be reported.  So I cannot resolve at this stage whether Experian used reasonable procedures when it obtained that information or reinvestigated Ashcraft's dispute.

Also precluding summary judgment on reasonableness is whether Experian had reason to distrust Welk Resort or the information it furnished.  Assuming Welk Resort furnished the wrong status date, the parties' experts disagree whether that information is illogical on its face considering that Welk Resort also furnished August 29, 2011, as the date that the account was closed.[98]  They also disagree about whether Welk Resort's furnishing a pay rate code of 4, which means 120 days delinquent, is illogical because it had not furnished a pay rate code of 3 for 90 days late.[99]

---

[94] ECF No. 134-1 at 20 (163:02–07).

[95] ECF No. 131-12 at 32.

[96] ECF No. 134-2 at 196.

[97] *Id.*

[98] *Compare* ECF No. 130-16 at 15–16 (220:20–221:10), *with* ECF No. 134-1 at 20 (162:03–164:06).

[99] *Compare* ECF No. 134-1 at 20 (162:03–164:06), *with* ECF No. ECF No. 130-16 at 18 (291:05–292:15).

The upshot of my decisions about Ashcraft's FCRA claims is that he can proceed to trial on both.  Ashcraft has established that Experian reported a patently wrong status date on a consumer report as required for both of his FCRA claims.  But he has not shown that Experian's reporting was materially misleading.  Factual disputes preclude summary judgment about whether Experian used reasonable procedures when it obtained the wrong status date and reinvestigated Ashcraft's dispute.  The jury will determine if Ashcraft disputed that the account should be reported as discharged and if reconciling public-record data with tradeline data and reviewing bankruptcy records are reasonable procedures for a CRA to perform in these disputed circumstances.  But Experian is entitled to summary judgment on Ashcraft's theory that reviewing county recorder's parcel records is a reasonably required procedure here.  I briefly sidestep the parties' arguments about Experian's liability for willful and negligent violations under the FCRA to first address Ashcraft's claim under Nevada's consumer-reporting statute.

## C.    NRS 598C.160

NRS 598C.160(1) provides that "[i]f a consumer disputes the accuracy of any information in the files of a reporting agency" that relates to him and notifies the agency of the dispute, the agency must, "within 5 business days of becoming aware of the dispute, notify any institutional sources of the information . . . ."[100]  The statute also requires the agency to reinvestigate the accuracy of the information disputed within 30 days unless it determines that the dispute is "frivolous or irrelevant."[101]  The agency must notify the consumer if it "concludes that the dispute is frivolous" and update its files if the information is wrong or cannot be

---

[100] Nev. Rev. Stat. § 598C.160(1).

[101] Id.

verified.[102]  A consumer can recover his actual damages plus costs of suit and reasonable attorneys' fees for negligent violations of NRS 598.160, as well as punitive damages for willful violations.[103]

Ashcraft argues that there is no genuine dispute that Experian failed to reinvestigate his dispute because "its reinvestigation contained inaccuracies[,]" like the wrong status date and no bankruptcy information.[104]  But the evidence provided by both sides shows that Experian did reinvestigate Ashcraft's dispute.  Ashcraft himself contends that Experian used "Auto-ACDV Processing" to reinvestigate his dispute, which he explains is a computer process that applies Experian's internal policies and procedures to process ACDV responses and update its files.[105]  The real crux of Ashcraft's claim isn't that Experian failed to reinvestigate his dispute, but that it didn't use reasonable procedures when doing so.  He argues that what happened here was an illogical error and Experian's auto-ACDV processing system should be better programmed to flag illogical errors for a human agent to examine.

But NRS 598C.160 does not have a reasonableness requirement for reinvestigating a consumer's dispute.[106]  The statute speaks of reasonableness only in the context of reinserting information that had been deleted after a reinvestigation, and it places the burden to use "reasonable procedures" on "[t]he person furnishing the information[,]" not the agency reporting it.[107]  So Ashcraft's claim under NRS 598C.160 fails as a matter of law.

---

[102] *Id.* at § 598C.160(2).

[103] *Id.* at §§ 598C.190 (willful), 598C.200 (negligent).

[104] ECF No. 130 at 27.

[105] *Id.* at 9, ¶ 11.

[106] Nev. Rev. Stat. § 598C.160(1)–(2).

[107] *Id.* at § 598C.160(3)(a).

**D.     Liability for willful and negligent noncompliance**

"A consumer may succeed on a claim under the FCRA only if he . . . shows that the defendant's violation was negligent or willful."[108]  To prove a negligent violation, a plaintiff must show that the defendant acted pursuant to an objectively unreasonable interpretation of the statute."[109]  "A willful violation of the FCRA occurs where a defendant knowingly or recklessly violated the FCRA."[110]  This is an objective standard.[111]  "To prove a willful violation, a plaintiff must show not only that the defendant's interpretation was objectively unreasonable, but also that the defendant ran a risk of violating the statute that was substantially greater than the risk associated with a reading that was merely careless."[112]

### 1.     Willful noncompliance

Ashcraft argues that Experian's conduct was objectively unreasonable because it designed the auto-ACDV processing system to do what it wanted and reported inaccurate information when it used that system to obtain information from Welk Resort and reinvestigate his dispute.[113]  He contends that Experian's conduct was reckless because it applied auto-ACDV processing in at least 75% of the more than 100,000 disputes it received during the relevant time period.[114]  Ashcraft insists that Experian's "blind reliance on ACDV responses without

---

[108] *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 673 (9th Cir. 2020) (citing 15 U.S.C. §§ 1681n (willful), 1681o (negligent)).

[109] *Id.* (citing *Syed v. M-I, LLC*, 853 F.3d 492, 505 (9th Cir. 2017)).

[110] *Shaw*, 891 F.3d at 761 (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007)).

[111] *Id.*

[112] *Marino*, 978 F.3d at 673 (citing *Safeco*, 551 U.S. at 69).

[113] ECF No. 130 at 25.

[114] *Id.*

accounting for patent contradictions between its public records and tradeline information is reckless."[115]  Ashcraft cites his expert's testimony and the CRRG to support his proposition.[116]

Ashcraft's arguments and evidence presuppose that his dispute put Experian on notice that the account's status should be reported as discharged in bankruptcy.  Yet the nature of his dispute is ambiguous, and the parties genuinely debate the dispute letter's objective meaning.  Ashcraft provides no evidence that Experian encountered this inaccuracy before.  Nor does he identify any statute or court decision that makes Experian's interpretation that it was not required to resolve whether the debt had been discharged—assuming Ashcraft disputed that it was—an unreasonable one.  The only FCRA provision that mentions bankruptcy is § 1681c's mandate that bankruptcy filings and adjudications cannot appear on a credit report beyond 10 years.  That provision does not require CRAs to determine if a debt has been discharged in bankruptcy.  The Ninth Circuit has not interpreted the Act as requiring CRAs to determine if a debt has been discharged when obtaining information or reinvestigating a consumer's dispute.

The Ninth Circuit did hold in *Dennis v. BEH-1, LLC* that "a credit reporting agency must exercise reasonable diligence in examining the court file to determine whether an adverse judgment has, in fact, been entered against the consumer."[117]  And "[a] reinvestigation that overlooks documents in the court file expressly stating that no adverse judgment was entered falls far short of this standard."[118]  But unlike the consumer's dispute in *Dennis*, the nature of Ashcraft's dispute is ambiguous about whether he claimed that the account's status should be

---

[115] *Id.*

[116] *Id.* (citing ECF No. 134-1 at 64–149 (62:23–73:22, 146:15–147:20, 220:20–224:21, 304:17–305:11)).

[117] *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1071 (9th Cir. 2008).

[118] *Id.* (emphasis omitted).

reported as discharged.  And there is no court document expressly stating that Ashcraft's debt to Welk Resort was discharged.

Despite these differences, my decision is informed by *Dennis*'s guidance that it is "important . . . for Experian, a company that traffics in the reputations of ordinary people, to train its employees to understand the legal significance of the documents they rely on."[119]  A reasonable jury could find that Experian's alleged conduct of unilaterally reporting the ACDV response date as the status date when Welk Resort provided a new status but no date for that information was objectively unreasonable.  If the trier of fact finds that Ashcraft disputed that the account's status should be reported as discharged in bankruptcy, then it could also find that Experian's failure to reconcile its internal data sets or review the records in Ashcraft's bankruptcy case was objectively unreasonable.  But a reasonable jury could not find that Experian's conduct or omission was reckless.  That finding is precluded by the fact that Ashcraft's dispute is ambiguous about whether he claimed that the account should be reported as discharged in bankruptcy.  I therefore grant Experian summary judgment on Ashcraft's claims that it willfully violated §§ 1681e and 1681i.

### 2. *Negligent noncompliance; actual damages*

To prevail on his claims that Experian negligently violated the FCRA, Ashcraft must show that he suffered actual damages as a result.  "'Actual damages' has been interpreted to include recovery for emotional distress and humiliation."[120]  "[N]o case has held that a denial of credit is a prerequisite to recovery under the FCRA."[121]

---

[119] *Id.*

[120] *Guimond*, 45 F.3d at 1333.

[121] *Id.*

Ashcraft testified in deposition that his credit worthiness suffered because "he believed it was possible he might have received better terms for a vehicle lease had his credit issues been resolved."[122] But, as Experian points out, Ashcraft testified that he did not have any documents showing that he received a higher interest rate than he should have and he didn't even know what interest rate he got.[123] Ashcraft provides no documents or other evidence to support his suspicions. Ashcraft's speculation that he could have gotten better lease terms is not sufficient to show that his creditworthiness was harmed as a matter of law.[124] Nor does it create a genuine dispute that he suffered that harm.[125] I therefore grant Experian summary judgment on the narrow issue of whether Ashcraft suffered an adverse credit event.

Ashcraft testified that he incurred out-of-pocket expenditures for transportation—like wear and tear on his vehicle and fuel—for the 5 to 10 trips of about 18 miles each that he took to meet with his attorneys about the inaccurate reporting.[126] Ashcraft testified that he lost about ten hours dealing with the inaccurate reporting.[127] Finally, Ashcraft testified that the inaccurate reporting has caused him to suffer stress and embarrassment.[128] Ashcraft explained that he

---

[122] ECF No. 130 at 13, ¶ 19; 26 (citing ECF No. 130-19 at 110:06–114:20; 175:18–25).

[123] ECF No. 141 at 27 (citing ECF No. 130-19 at 126:05–130:07).

[124] *See Celotex*, 477 U.S. at 323 (explaining that the party moving for summary judgment "bears the initial responsibility" of identifying evidence in the record that he "believes demonstrate[s] the absence of a genuine issue of material fact"); *C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480 (moving party with burden of proof must present evidence that would entitle him "to a directed verdict if the evidence went uncontroverted at trial").

[125] *See Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) ("Mere allegation and speculation do not create a factual dispute for purposes of summary judgment.") (internal quotation omitted).

[126] ECF No. 130 at 13, ¶ 19; 26–27 (citing ECF No. 130-19 at 166:01–167:07; 171:22–173:21); *accord* ECF No. 130-19 at 172:23–173:21.

[127] *Id.* at 13, ¶ 19; 27 (citing ECF No. 130-19 at 167:15–20; 220:09–222:01; 51:01–52:09; 137:11–18; 202:24–25; 203:19; 220:09–222:01).

[128] *Id.*

wants closure, and he fears that reporting events that should naturally happen—like his bankruptcy aging off his credit report—will not come to pass without dispute.[129]  He wanted "everything to come to a close[,]" but "as long as it was carrying on and on and on, it caused stress in that respect.  It's something you don't completely forget about.  And so you are thinking about it, then you get upset, or whatever, wanting this to be done, you know."[130]  Ashcraft also explained that "[i]t's embarrassing to be confronted with turndowns and stuff."[131]  And he testified that his experience was "not pleasant" and has caused "different forms of stress."[132]  These are cognizable economic and emotional damages under the FCRA, and Ashcraft may establish them at trial with his own testimony.[133]

### Conclusion

IT IS THEREFORE ORDERED that Ashcraft's motion for summary judgment **[ECF No. 130]** and Experian's motion for summary judgment **[ECF No. 134] are GRANTED in part**: Ashcraft can proceed on his claims that Experian negligently violated §§ 1681e and 1681i when it prepared the May 2016 consumer (reinvestigation) report with a patently wrong status date.  Ashcraft cannot proceed on his theories that reviewing county recorder's records is a reasonable procedure for a CRA to perform on these facts or that he suffered an adverse credit event because of Experian's inaccurate reporting.  The motions are **DENIED in all other respects**.

---

[129] ECF No. 130-19 at 220:24–222:01.

[130] *Id.* at 220:24–221:09.

[131] *Id.* at 202:24–203:01.

[132] *Id.* at 205:02–06.

[133] *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1039 (9th Cir. 2003) (explaining that objective evidence of emotional damages is not required in the Ninth Circuit; plaintiff's "testimony alone is enough to substantiate . . . emotional distress damages").

1      IT IS FURTHER ORDERED that **this case is REFERRED to the magistrate judge for**

2  **a MANDATORY SETTLEMENT CONFERENCE**.  The parties' obligation to file their joint

3  pretrial order is STAYED until 10 days after that settlement conference.

4                                             _____

                                          U.S. District Judge Jennifer A. Dorsey

5                                              March 12, 2021